## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PACIRA BIOSCIENCES, INC., | Civil Action No. 2:21-cv-9264-MCA-JSA |
| Plaintiff, | |
| v. | |
| AMERICAN SOCIETY OF ANESTHESIOLOGISTS, INC., *et al.* | **Return Date: July 6, 2021**<br>*Filed Electronically* |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS NASIR HUSSAIN, BRENDAN SHEEHY, MICHAEL K. ESSANDOH, DAVID L. STAHL, AND TRISTAN E. WEAVER

Gerard P. Norton, Esq.
Corinne McCann Trainor, Esq.
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Tel: (609) 896-3600 / Fax (609) 896-1469
Email: GNorton@FoxRothschild.com
        CTrainor@FoxRothschild.com

David S. Bloomfield, Jr., Esq. (*Pro Hac Vice*)
Kirsten R. Fraser, Esq. (*Pro Hac Vice*)
**PORTER WRIGHT MORRIS & ARTHUR LLP**
41 S. High St., Ste. 2900
Columbus, OH 43215
Tel: (614) 227-2000 / Fax (614) 227-2100
Email: dbloomfield@porterwright.com
        kfraser@porterwright.com

*Attorneys for Defendants Nasir Hussain, Brendan Sheehy, Michael K. Essandoh, David L. Stahl, and Tristan E. Weaver*

## <u>TABLE OF CONTENTS</u>

<u>Page:</u>

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ...................................................................................... 6

I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE OHIO
       STATE DEFENDANTS ARE IMMUNE FROM SUIT PURSUANT TO
       OHIO R.C. 2743.02, *et seq.* AND OHIO R.C. 9.86. ............................ 7

       A.     This Court Has No Jurisdiction Over the Ohio State Defendants
              under the Court of Claims Act. ............................................ 7

       B.     The Ohio State Defendants Are Immune From Suit Under Ohio
              Law. .............................................................................. 9

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE OHIO
       STATE DEFENDANTS ARE IMMUNE FROM SUIT PURSUANT TO
       THE ELEVENTH AMENDMENT. ....................................................... 11

III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT
       LACKS PERSONAL JURISDICTION OVER THE OHIO STATE
       DEFENDANTS. .............................................................................. 14

       A.     Pacira Must Establish That Each of the Ohio State Defendants Has
              Sufficient Minimum Contacts with New Jersey. ...................... 14

       B.     Plaintiff Cannot Establish That The Ohio State Defendants Have
              Minimum Contacts with New Jersey. ................................... 16

CONCLUSION ................................................................................... 18

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
  527 U.S. 706 (1999)..................................................................................11

*Bailey v. Ohio State Univ.*,
  487 F. Supp. 601 (S.D. Ohio 1980) ..........................................................8, 12

*Betts v. New Castle Youth Dev. Ctr.*,
  621 F.3d 249 (3d Cir. 2010)......................................................................11

*Blakey v. Univ. of Toledo*,
  No. 03-1438 (SEB)(VSS), 2004 U.S. Dist. LEXIS 568, 2004 WL 253251
  (S.D. Ind. Jan. 12, 2004) ..........................................................................7, 8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................15

*Conley v. Shearer*,
  595 N.E.2d 862 (Ohio 1992) .....................................................................9

*Creditors Relief LLC v. United Debt Settlement LLC*,
  No. 17-7474 (JMV), 2019 U.S. Dist. LEXIS 222358, 2019 WL 7288978
  (D.N.J. Dec. 30, 2019) ..............................................................................16, 17

*Daniel v. Am. Bd. of Emergency Med.*,
  988 F. Supp. 127 (W.D.N.Y. 1996) ...........................................................8, 12

*Display Works, LLC v. Bartley*,
  182 F. Supp. 3d 166 (D.N.J. 2016) ...........................................................14, 16, 17

*Edelman v. Jordan*,
  415 U.S. 651 (1974)..................................................................................12, 13

*Elliott v. Ohio Dept. of Rehab. & Corr.*,
  637 N.E.2d 106 (Ohio Ct. App. 1994).......................................................10

*Ford Motor Co., v. Dep't of Treasury*,
  323 U.S. 459 (1945)..................................................................................12

*Haynes v. Marshall*,
  887 F.2d 700 (6th Cir. 1989) .........................................................................7

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984).....................................................................................14

*IMO Indus., Inc. v. Kiekert*,
  155 F.3d 254 (3d Cir. 1998).........................................................14, 15, 16, 17

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945).....................................................................................14

*Johns v. Supreme Court*,
  753 F.2d 524 (6th Cir. 1985) .......................................................................12

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)................................................................................13, 14

*Mitchell v. Comm'n on Adult Entm't Establishments*,
  12 F.3d 406 (3d Cir. 1993)...........................................................................12

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977)...........................................................................6

*Murray v. Wilson Distilling Co.*,
  213 U.S. 151 (1909).....................................................................................12

*Newman v. N.C. Ins. Underwriting Ass'n*,
  No. 20-1464 (RBK)(JS), 2020 U.S. Dist. LEXIS 212387, 2020 WL 6689756
  (D.N.J. Nov. 13, 2020)..................................................................................15

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)...........................................................................6

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984).......................................................................................13

*Powell v. Morris*,
  184 F.R.D. 591 (S.D. Ohio 1998) ..................................................................7

*Quern v. Jordan*,
  440 U.S. 332 (1979).....................................................................................12

*Seminole Tribe v. Florida*,
  517 U.S. 44 (1996).......................................................................................12

iv

*Stein v. Kent State Univ. Bd. of Trustees*,
    994 F. Supp. 898 (N.D. Ohio 1998), *aff'd*, 181 F.3d 103 (6th Cir. 1999) .............................12

*Thacker v. Bd. of Trustees of Ohio State Univ.*,
    285 N.E.2d 380 (Ohio Ct. App. 1971) ..................................................................................12

*Thacker v. Bd. of Trustees of Ohio State Uni*v.,
    298 N.E.2d 542 (Ohio 1973) .................................................................................................8

*Theobald v. Univ. of Cincinnati*,
    857 N.E.2d 573 (Ohio 2006) .................................................................................................9

*Thomson v. Harmony*,
    65 F.3d 1314 (6th Cir. 1995) .................................................................................................7

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................................14, 15

**Statutes**

Ohio Rev. Code Ann. § 9.86 .................................................................................................1, 7, 9

Ohio Rev. Code Ann. § 9.87 .........................................................................................................13

Ohio Rev. Code Ann. § 2743.02 ........................................................................................7, 8, 9, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1, 6, 18

Fed. R. Civ. P. 12(b)(2) ..............................................................................................1, 6, 17, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................................6

https://medicine.osu.edu/faculty/promotion-and-tenure/requirements (last visited
    June 8, 2021) .......................................................................................................................10

https://medicine.osu.edu/research (last visited June 8, 2021) .....................................................10

https://oaa.osu.edu/sites/default/files/links_files/Anesthesiology-APT-Revision-
    approved-5-6-2021.pdf (last visited June 9, 2021) ...............................................................10

https://www.acgme.org/Portals/0/PFAssets/ProgramRequirements/040_Anesthesi
    ology_2020.pdf?ver=2020-06-18-132902-423 (last visited June 9, 2021) ...........................10

*R.* 4:4-4(b)(1) ................................................................................................................................14

v

**Constitutions**

United States Constitution Eleventh Amendment ......................................................1, 2, 11, 12, 13

United States Constitution Fourteenth Amendment ...........................................................1, 13, 14

United States Constitution Article I...............................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Pacira BioSciences, Inc. ("Pacira")'s single claim for trade libel as asserted against Defendants Dr. Nasir Hussain, Dr. Brendan Sheehy, Dr. Michael K. Essandoh, Dr. David L. Stahl, and Dr. Tristan E. Weaver (collectively, the "Ohio State Defendants") suffers from fatal, incurable defects. This Court, the U.S. District Court for the District of New Jersey, does not have subject-matter jurisdiction over this dispute or personal jurisdiction over these defendants to hear this claim. As employees of the State of Ohio, the Ohio State Defendants are immune from suit under the doctrine of sovereign immunity. To that end, Ohio law and the Eleventh Amendment bar this suit from being brought in this forum. As Ohioans with virtually no contacts with this forum, the Ohio State Defendants also lack sufficient minimum contacts to satisfy the Due Process Clause under the Fourteenth Amendment, again barring this suit from being brought here. Accordingly, by way of this motion, the Ohio State Defendants seek dismissal of this lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) and (2).

Ohio Rev.Code Ann. § 9.86 extends immunity to all state employees acting within the scope of their employment. There is only one forum in which this immunity determination can be made: the Ohio Court of Claims. In point of fact, state law claims against the State of Ohio may only be brought in the Ohio Court of Claims, and it is that court that has exclusive, original jurisdiction to determine, initially, whether a state employee is entitled to personal immunity. As such, this Court does not have subject-matter jurisdiction over the Ohio State Defendants, requiring dismissal of this Complaint as against them.

Likewise, the Eleventh Amendment bars this action from being pursued in this Court against these particular defendants. The Eleventh Amendment operates as a constitutional limit on federal courts' subject-matter jurisdiction over an action for money damages brought against a

state.  Eleventh Amendment immunity extends not only to the states, but also to instrumentalities of the state, and officers of the state acting in their official capacities.  Without question, the Ohio State Defendants are employed by an instrumentality of the state and were acting in their official capacities at all times relevant to this lawsuit.  Therefore, the Eleventh Amendment requires this suit be dismissed because the Court does not have the requisite subject-matter jurisdiction.

Beyond this lawsuit's violation of principles of sovereign immunity, the Ohio State Defendants have absolutely no connection to New Jersey, let alone sufficient minimum contacts that would establish personal jurisdiction over them in this forum.  Moreover, their alleged conduct has no connection to New Jersey other than the fact that Pacira happens to be headquartered here.  This is not sufficient to establish personal jurisdiction under controlling Third Circuit law and prior decisions of this Court, requiring dismissal of this action against the Ohio State Defendants.

## **STATEMENT OF FACTS**

In February 2021, the American Society of Anesthesiologists ("ASA") published an article titled "Perineural Liposomal Bupivacaine Is Not Superior to Nonliposomal Bupivacaine for Peripheral Nerve Block Analgesia" (the "Article") in its peer-reviewed medical journal *Anesthesiology*.  (Compl. ¶¶ 7, 35.)  The Article systematically reviewed nine trials to assess the reported effectiveness of perineural liposomal bupivacaine as compared with nonliposomal local anesthetics.  (*Id.* at Exh. 1, ECF No. 1-1.)  Plaintiff Pacira manufactures liposomal bupivacaine under the brand name EXPAREL.  (*Id.* ¶ 1.)

The Article was authored by Dr. Nasir Hussain, Dr. Richard Brull, Dr. Brendan Sheehy, Dr. Michael K. Essandoh, Dr. David L. Stahl, Dr. Tristan E. Weaver, and Dr. Faraj W. Abdallah.  (*Id.* ¶ 35.)  Dr. Hussain, Dr. Sheehy, Dr. Essandoh, Dr. Stahl, and Dr. Weaver are all members of

2

the Department of Anesthesiology at The Ohio State University ("Ohio State" or the "University") College of Medicine.  (Compl. ¶¶ 9, 11-4.)

### A. The Ohio State Defendants

Dr. Hussain is a Resident within the Department of Anesthesiology in the University's College of Medicine.  (Decl. of Dr. Nasir Hussain, dated June 10, 2021, ¶ 1, hereinafter "Hussain Decl.").  He is an employee of The Ohio State University, and he lives and works in Columbus, Ohio.  (*Id.* ¶ 3.)  Dr. Hussain did not attend university or medical school in New Jersey, he has never lived in New Jersey, and he has never practiced medicine in New Jersey.  (*Id.* ¶¶ 4-6.)  As part of his employment with Ohio State, Dr. Hussain conducts research and publishes scholarly work in journals to elevate Ohio State's profile in the global medical community.  (*Id.* ¶¶ 15, 17.)

Dr. Sheehy is a Resident within the Department of Anesthesiology at Ohio State.  (Decl. of Dr. Brendan Sheehy, dated June 10, 2021, ¶ 1, hereinafter "Sheehy Decl.").  He is an employee of The Ohio State University, and he lives and works in Columbus, Ohio.  (*Id.* ¶ 3.)  Dr. Sheehy did not attend university or medical school in New Jersey, he has never lived in New Jersey, and he has never practiced medicine in New Jersey.  (*Id.* ¶¶ 4-6.)  As part of his employment with Ohio State, Dr. Sheehy conducts research and publishes scholarly work in journals to elevate Ohio State's profile in the global medical community.  (*Id.* ¶¶ 15, 17.)

Dr. Essandoh is an anesthesiologist and member of the faculty of the Department of Anesthesiology at Ohio State.  (Decl. of Dr. Michael K. Essandoh, dated June 10, 2021, ¶ 1, hereinafter "Essandoh Decl.")  He is an employee of The Ohio State University, and he lives and works in Columbus, Ohio.  (*Id.* ¶ 3.)  Dr. Essandoh serves as the Associate Director of Clinical Research in the Department of Anesthesiology.  (*Id.* ¶ 1.)  As part of his employment with the

3

University, Dr. Essandoh conducts research and publishes scholarly work in journals to elevate Ohio State's profile in the global medical community. (*Id.* ¶¶ 15, 17.) Indeed, Dr. Essandoh has published over 50 peer-reviewed articles in his career and has further authored a book chapter regarding echocardiography for mitral valve assessment. (*Id.* ¶ 16.) Dr. Essandoh did not attend university or medical school in New Jersey, he has never lived in New Jersey, and he has never practiced medicine in New Jersey. (*Id.* ¶¶ 4-6.)

Dr. Stahl is an intensivist and anesthesiologist and member of the faculty of the Department of Anesthesiology at Ohio State. (Decl. of Dr. David Stahl, dated June 9, 2021, ¶ 1, hereinafter "Stahl Decl.") He is an employee of The Ohio State University, and he lives and works in Columbus Ohio. (*Id.* ¶ 3.) Dr. Stahl serves as the Associate Program Director of the Anesthesiology Residency Program in the Department of Anesthesiology. (*Id.* ¶ 1.) As part of his employment with Ohio State, Dr. Stahl conducts research and publishes scholarly work in journals to elevate Ohio State's profile in the global medical community. (*Id.* ¶¶ 15, 17.) Dr. Stahl has published over 12 peer-reviewed articles in his career, in addition to other scholarly work. (*Id.* ¶ 16.) Dr. Stahl did not attend university or medical school in New Jersey, he has never lived in New Jersey, and he has never practiced medicine in New Jersey. (*Id.* ¶¶ 4-6.)

Dr. Weaver is an anesthesiologist and member of the faculty of the Department of Anesthesiology at Ohio State. (Decl. of Dr. Tristan Weaver, dated June 10, 2021, ¶ 1, hereinafter "Weaver Decl.") He is an employee of The Ohio State University, and he lives and works in Columbus, Ohio. (*Id.* ¶ 3.) Dr. Weaver serves as the Director of Clinical Research in the Department of Anesthesiology. (*Id.* ¶ 1.) As part of his employment with Ohio State, Dr. Weaver conducts research and publishes scholarly work in journals to elevate Ohio State's profile in the

global medical community.  (*Id.* ¶ 15.)  Dr. Weaver has published over 20 peer-reviewed articles in his career.  (*Id.* ¶ 16.)  Dr. Weaver did not attend university or medical school in New Jersey, he has never lived in New Jersey, and has never practiced medicine in New Jersey.  (*Id.* ¶¶ 4-6.)

### B.    The Article

Dr. Hussain was the Article's lead author.  (Hussain Decl. ¶ 8.)  The Article is a systematic review and meta-analysis of nine trials that evaluated the reported effectiveness of perineural liposomal bupivacaine as compared with nonliposomal local anesthetics.  (*Id.* ¶ 9.)  None of the evaluated trials were conducted in New Jersey.  (*Id.* ¶ 10.)  The Article was drafted in Columbus, Ohio by Dr. Hussain and other Ohio State Defendants, and it was co-authored by three additional anesthesiologists located in Canada.  (*Id.* ¶ 11.)  The Article was submitted to *Anesthesiology*, a medical journal published by the ASA in July 2020 and was approved for publication in November 2020.  (Compl. Exh. 1, ECF No. 1-1, PageID 19.)  The intent behind the scholarly article was to share information with the anesthesiology community, not to target Pacira or the State of New Jersey.  (Hussain Decl. ¶ 14.)

### C.    The Present Dispute

Pacira brought the present lawsuit following the publication of *Anesthesiology*'s February 2021 issue.  (Compl. ¶ 1.)  As noted above, *Anesthesiology* is the official peer-reviewed journal of the ASA.  (*Id.* ¶¶ 7, 29.)  The ASA is a professional medical organization, with over 54,000 members across the United States and its territories.  (*Id.* ¶ 6.)  It is headquartered in Illinois and incorporated in New York.  (*Id.* ¶ 5.)  The ASA's journal, *Anesthesiology*, is regarded as one of the most important academic journals in the field of anesthesiology.  (*Id.* ¶ 29.)  *Anesthesiology* is

available in print and online forms, with over 43,000 print subscribers and over 8,000 online subscribers.  (*Id.* ¶ 30.)

The February 2021 issue contained three articles that were critical of the reported efficacy of liposomal bupivacaine, a drug manufactured by Pacira under the brand name EXPAREL.  (*Id.* ¶¶ 3, 35).   Pacira alleges that those articles contain "false and misleading statements and conclusions that disparage EXPAREL."  (*Id.* ¶ 35.)  Based on these allegations, Pacira brought a single claim for trade libel against the ASA, the editor-in-chief of *Anesthesiology*, and the authors of the articles Pacira finds objectionable, including the Ohio State Defendants.[1]

## ARGUMENT[2]

Under Fed. R. Civ. P. 12(b)(1), Plaintiff's allegations are not entitled to a presumptive truth in a motion to dismiss that attacks the existence of subject-matter jurisdiction in fact, as the Ohio State Defendants do here.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The existence of disputed material facts does not preclude the Court from evaluating for itself the merits of jurisdictional claims.  *Id.*  Indeed, the Court is free to weigh the evidence to determine whether it has the power to hear the case.  *Id.*  Importantly, the plaintiff bears the burden of proving that subject-matter jurisdiction does in fact exist.  *Id.*

In a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the Court must "accept all of the plaintiffs' allegations as true and construe disputed facts in favor of the plaintiff."  *O'Connor v.*

---

[1]     Pacira initially brought a motion for preliminary injunction against all Defendants, including the Ohio State Defendants.  However, that motion was withdrawn, and all that remains is Pacira's claim for trade libel.

[2]     Defendant ASA is moving for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  The Ohio State Defendants hereby adopt and incorporate those arguments, and request the Court dismiss the Complaint as against the Ohio State Defendants for failure to state a claim.

*Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007).  Again, the plaintiff bears the burden of establishing personal jurisdiction.  *Id.*

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE OHIO STATE DEFENDANTS ARE IMMUNE FROM SUIT PURSUANT TO OHIO R.C. 2743.02, *et seq.* AND OHIO R.C. 9.86.

### A.    This Court Has No Jurisdiction Over the Ohio State Defendants under the Court of Claims Act.

The Ohio State Defendants are employees of the state of Ohio.  As such, they are immune from suit, according to principles of sovereign immunity and Ohio law.  Through the Ohio Court of Claims Act, Ohio waived its sovereign immunity, but only to the extent that claims against the state must be heard in the Ohio Court of Claims.  Furthermore, only the Ohio Court of Claims may determine whether an employee of the state is entitled to personal immunity under Ohio Rev. Code Ann. § 9.86.  *See* Ohio Rev. Code Ann. § 2743.02(F) (the Ohio Court of Claims has "exclusive, original jurisdiction to determine, initially, whether the [state] officer or employee is entitled to personal immunity...").

In other words, all courts—federal and state—lack subject-matter jurisdiction over state law claims against officers or employees of the state of Ohio unless and until the Ohio Court of Claims determines whether or not that officer or employee is entitled to personal immunity.  *See Powell v. Morris,* 184 F.R.D. 591, 597 (S.D. Ohio 1998).  Conclusively, "[u]ntil the Ohio Court of Claims determines that [the defendants] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendant jurisdiction." *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989).  Thus, a prerequisite to an action against an Ohio state employee in federal court is a determination by the Ohio Court of Claims that the employee is not immune from liability.  No such determination has been made in this matter.  Accordingly, this Court cannot

7

even consider whether the Ohio State Defendants are immune from suit on any state law tort claims raised by Pacira, let alone determine whether or not the Ohio State Defendants may be held liable by Pacira, until after the Ohio Court of Claims hears the matter.  *See Thomson v. Harmony*, 65 F.3d 1314, 1318 n.3 (6th Cir. 1995).

Courts outside of Ohio and the Sixth Circuit have recognized this principle of law and dismissed lawsuits accordingly.  For example, in *Blakey v. Univ. of Toledo*, No. 03-1438 (SEB)(VSS), 2004 U.S. Dist. LEXIS 568, 2004 WL 253251 (S.D. Ind. Jan. 12, 2004), a visiting professor at the University of Toledo sued the university and a professor for allegedly intentionally withholding her research material in the Southern District of Indiana.  *Id.* at *1-2, *1.  Recognizing the University of Toledo as a state institution, the court explained that, by statute, Ohio and its instrumentalities have waived immunity from suit "*so long as* the action is brought in the Ohio Court of Claims."  *Id.* at *2, *1 (citing Ohio Rev. Code Ann. § 2743.02) (emphasis in original). The court dismissed the action "as inappropriate for an Indiana court" due to the Ohio Court of Claims Act.  *Id.*

Here, the Ohio State Defendants are employees of the Ohio State University College of Medicine, an academic unit of The Ohio State University.  *See Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 157 (W.D.N.Y. 1996) (citing Bylaws of the Medical Staff of the Ohio State University Hospitals § 3335-43-04).  The Ohio State University is an instrumentality of the State of Ohio.  *See Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 606 (S.D. Ohio 1980); *Daniel*, 988 F. Supp. 127 at 157; *Thacker v. Bd. of Trustees of Ohio State Univ.*, 298 N.E.2d 542, 543-44 (Ohio 1973).  This means that the Ohio State Defendants are state employees, and, as such, claims against them are subject to the Ohio Court of Claims Act.  Therefore, the Ohio State Defendants

8

cannot be sued in federal court on a state law claim unless and until the Ohio Court of Claims has determined that the Ohio State Defendants are not immune from suit.

Pacira has not alleged that it sought a determination from the Ohio Court of Claims as to whether or not the Ohio State Defendants are immune from suit, nor can it, because Pacira has not done so.  Consequently, this Court lacks subject-matter jurisdiction over Pacira's claim against the Ohio State Defendants, and there is no cognizable claim against the Ohio State Defendants.  For this reason, the Ohio State Defendants respectfully request that the Court dismiss this action against them.

### B.     The Ohio State Defendants Are Immune From Suit Under Ohio Law.

Even if this Court had subject-matter jurisdiction to determine whether the Ohio State Defendants are immune from suit under Ohio Rev. Code Ann. § 9.86, this matter would still require dismissal because the Ohio State Defendants were acting within the scope of their employment when they authored the Article.  As such, they are immune from suit, and cannot be held liable in connection with authoring the Article.

Ohio Rev. Code Ann. § 9.86 provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

*Id*.  The Ohio Supreme Court explained how this law operates in practice:

> If the Court of Claims determines that the employee was acting within the scope of employment, in furtherance of the interests of the state, the state has agreed to

9

accept responsibility for the employee's acts.  R.C. 9.86 and 2743.02(A).  In that event, only the state is subject to suit, and the litigation must be pursued in the Court of Claims.  If the Court of Claims determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept responsibility for the employee's acts and the employee is personally answerable for his acts in a court of common pleas.

*Conley v. Shearer*, 595 N.E.2d 862, 866 (Ohio 1992).  Accordingly, a state employee acts within the scope of employment if the employee's actions are in furtherance of the interests of the state. *Id*.  Conversely, "[i]f an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is 'manifestly outside the scope of employment'…." *Theobald v. Univ. of Cincinnati,* 857 N.E.2d 573, 580 (Ohio 2006).  Importantly here, "[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment." *Elliott v. Ohio Dept. of Rehab. & Corr.*, 637 N.E.2d 106, 108 (Ohio Ct. App. 1994).  Instead, the act must be so divergent that it severs the employer-employee relationship. *Id.*

In this case, there is no question that authoring the Article was in furtherance of the interests of the state, with a direct relationship to the University's business and mission.  The Ohio State University College of Medicine's website proclaims, "[r]esearch is an integral part of what makes Ohio State such a force in the global medical community."[3]  To elevate the University's profile in the global medical community, the University emphasizes that faculty increasingly engage in scholarship and publication in peer-reviewed journals as a criteria for promotion within the University.[4]  Indeed, the Ohio State Anesthesiology Department specifically requires faculty

---

[3]     https://medicine.osu.edu/research (last visited June 8, 2021).

[4]     https://medicine.osu.edu/faculty/promotion-and-tenure/requirements (last visited June 8,

"demonstrate contributions to scholarship, a significant portion of which should include primary or senior authorship of peer-reviewed journal publications and scholarly review articles" to be considered for promotion.[5]  Furthermore, anesthesiology residents are required to participate in academic scholarship, including the preparation and publication of review articles, for The Ohio State University College of Medicine's Anesthesiology Residency program to maintain its national accreditation[6]; failure of an anesthesiology resident to perform such research may jeopardize this accreditation, damaging the national reputation of the University College of Medicine and the University as a whole.  It follows that preparing and publishing articles advances the University's mission, and engaging in such authorship falls within the scope of the job duties of a University employee.

In this case, the Ohio State Defendants were furthering the University's interests by submitting the Article to *Anesthesiology*.  (Hussain Decl. ¶¶ 15-18); (Sheehy Decl. ¶¶ 15-18); (Essandoh Decl. ¶¶ 15-18); (Stahl Decl. ¶¶ 15-18); (Weaver Decl. ¶¶ 15-18).  This conclusion is further evidenced by the fact that the Article identifies that it was submitted for publication "[f]rom the Department of Anesthesiology, The Ohio State University, Wexner Medical Center, Columbus, Ohio."  (Compl. Exh. 1, ECF No. 1-1 at PageID 47.)  Accordingly, it is indisputable that the Ohio State Defendants were acting within the scope of their employment when they authored the Article, and thus are immune from suit.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE OHIO STATE

2021).

[5]     https://oaa.osu.edu/sites/default/files/links_files/Anesthesiology-APT-Revision-approved-5-6-2021.pdf (last visited June 9, 2021).

[6] https://www.acgme.org/Portals/0/PFAssets/ProgramRequirements/040_Anesthesiology_2020.pdf?ver=2020-06-18-132902-423 (last visited June 9, 2021).

**DEFENDANTS ARE IMMUNE FROM SUIT PURSUANT TO THE ELEVENTH AMENDMENT.**

The Ohio State Defendants are also immune from suit in this Court because the Eleventh Amendment bars state law claims against states (and state employees).  The doctrine of sovereign immunity derives from an old English premise that "the King can do no wrong."  While the United States is not a monarchy, the Supreme Court has nevertheless unquestionably held that sovereign immunity, particularly for state governments, is a constitutional requirement pursuant to the Eleventh Amendment of the United States Constitution.  *See Alden v. Maine*, 527 U.S. 706, 712 (1999) ("We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts.").  This constitutional limit extends to federal courts.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010) ("State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment.").  Thus, the Eleventh Amendment operates as a constitutional limit on federal courts' subject-matter jurisdiction over an action for money damages brought against a state.  *Seminole Tribe v. Florida*, 517 U.S. 44, 49 (1996).

Eleventh Amendment immunity can only be waived when a state presents an "unequivocal indication of consent to federal jurisdiction in a suit otherwise barred."  *Mitchell v. Comm'n on Adult Entm't Establishments*, 12 F.3d 406, 408 (3d Cir. 1993); *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (finding waiver is only found "where stated 'by the most express language or by such overwhelming implications from text as [will] leave no room for any other reasonable construction'") (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).  Congressional action may waive Eleventh Amendment immunity, but congressional abrogation of

12

Eleventh Amendment immunity must be explicit.  *See Quern v. Jordan*, 440 U.S. 332, 344 (1979).

No such abrogation of Ohio's Eleventh Amendment immunity for common law torts exists.

A state maintains Eleventh Amendment immunity from suit in federal court even though

it waives immunity from liability and consents to be sued in its own courts.  *See Ford Motor Co.,*

*v. Dep't of Treasury*, 323 U.S. 459, 465 (1945).  The State of Ohio waived its immunity from suit

only to the extent of having its liability determined by the Ohio Court of Claims.  *See* Ohio Rev.

Code Ann. § 2743.02(A)(1).  Accordingly, Ohio Rev. Code Ann. 2743.02 is not a waiver of

immunity from suit in federal court.  *See Johns v. Supreme Court*, 753 F.2d 524, 527 (6th Cir.

1985); *Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 902 (N.D. Ohio 1998), *aff'd*,

181 F.3d 103 (6th Cir. 1999).

As discussed above, The Ohio State University is an instrumentality of the State of Ohio

for the purposes of Eleventh Amendment analysis.  *See, e.g., Daniel*, 988 F. Supp. at 162; *Bailey*,

487 F. Supp. at 604; *Thacker v. Bd. of Trustees of Ohio State Univ.*, 285 N.E.2d 380, 382 (Ohio

Ct. App. 1971).  Thus, the University is immune from suit in this Court under the Eleventh

Amendment.

Furthermore, the Ohio State Defendants were acting in their official capacities as agents of

the State of Ohio, entitling them to Eleventh Amendment immunity.  Just as the state itself may

not be sued in federal court, suits against state officials are barred where the state is the real party

in interest and public funds would be used to satisfy a judgment.  *See Edelman*, 415 U.S. at 663.

Here, the Ohio State Defendants were performing their official duties in drafting the Article.

(Hussain Decl. ¶ 18; Sheehy Decl. ¶ 18; Essandoh Decl. ¶ 18; Stahl Decl. ¶ 18; Weaver Decl. ¶

18.)  Further, the State of Ohio is required by statute to indemnify officers and employees from

liability incurred in the performance of their official duties.  *See* Ohio Rev. Code Ann § 9.87.  This makes the State of Ohio the real party in interest in this lawsuit.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter").  Thus, the Ohio State Defendants are immune from suit in this Court pursuant to the Eleventh Amendment, requiring dismissal.

### III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER THE OHIO STATE DEFENDANTS.

In addition to subject-matter jurisdictional defects, Pacira cannot establish that any of the Ohio State Defendants have the requisite "minimum contacts" with New Jersey to assert personal jurisdiction consistent with the requirements of the Fourteenth Amendment of the United States Constitution.  Due process requires that "each defendant" take actions that subject him to the jurisdiction of the court; that is, multiple defendants may not be considered in the aggregate—each defendant's contacts with the forum state must be evaluated individually.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).  The indisputable facts demonstrate that there is no personal jurisdiction over any of the Ohio State Defendants, requiring dismissal of the lawsuit.

### A.   Pacira Must Establish That Each of the Ohio State Defendants Has Sufficient Minimum Contacts with New Jersey.

Establishing personal jurisdiction in the Third Circuit is a two-step process that asks two questions: 1) does the relevant state's long arm statute permit the exercise of personal jurisdiction; and, 2) does the defendant have sufficient contacts to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment of the United States?  *See Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert*, 155 F.3d 254, 258-259

(3d Cir. 1998).  In New Jersey, *R.* 4:4-4(b)(1) governs personal jurisdiction and states that personal jurisdiction may be obtained in any manner consistent with "due process of the law."  This means that in New Jersey, the typical two-step process is condensed to one step.  *Id.*

The Ohio State Defendants can be subject to personal jurisdiction in New Jersey only to the extent each of them has "certain minimum contacts with [New Jersey]."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  The Court must also determine that asserting personal jurisdiction over the Ohio State Defendants comports with "traditional notions of fair play and substantial justice."  *Id.*

Pacira does not allege that the Ohio State Defendants have continuous and systematic contacts with New Jersey such that the Court could exercise general jurisdiction over them.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  Instead, Pacira alleges that the Court has specific jurisdiction over the Ohio State Defendants merely because the "effect of their conduct has been felt in New Jersey."  (Compl. ¶ 22.)  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotations omitted).  To establish minimum contacts in a specific jurisdiction inquiry, a court must determine whether a "defendant purposefully directed [his] activities at the forum," and "the litigation must arise out of or relate to one of those activities."  *Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-1464 (RBK)(JS), 2020 U.S. Dist. LEXIS 212387, at *10, 2020 WL 6689756, at *3 (D.N.J. Nov. 13, 2020) (internal citations and quotations omitted).

There are a few nuances to the analysis.  "First, the relationship must arise out of contacts

15

that the 'defendant *himself* creates with the forum State.'"   *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).   Second, the "minimum contacts" analysis under the Due Process Clause "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*.

**B.      Plaintiff Cannot Establish That The Ohio State Defendants Have Minimum Contacts with New Jersey.**

The Ohio State Defendants do not have sufficient minimum contacts with New Jersey that would establish personal jurisdiction in this Court.   None of the Ohio State Defendants have lived in New Jersey, practiced medicine in New Jersey, or treated patients in New Jersey.   (Hussain Decl. ¶¶ 5-6; Sheehy Decl. ¶¶ 5-6; Essandoh Decl. ¶¶ 5-6; Stahl Decl. ¶¶ 5-6; Weaver Decl. ¶¶ 5-6.)   Moreover, not even a single step related to authorship of the Article involved New Jersey.   The Article was drafted in Ohio and Canada—not New Jersey.   (Hussain Decl. ¶ 11.)   None of the trials that are the subject of the Article took place in New Jersey.   (*Id.* ¶ 10.)   The Article was not specifically drafted for or directed at practitioners in New Jersey; rather, it was drafted for broad publication for general consumption in the anesthesiology field.   (*Id.* ¶ 14.)

This analysis does not change even though Pacira has alleged that the Ohio State Defendants committed an intentional tort.   "An intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."   *IMO Indus.*, 155 F.3d at 260.   The "effects" test requires a plaintiff to demonstrate that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be

16

said to be the focal point of the tortious activity.  *See Display Works,* 182 F. Supp. 3d at 180-81

(referring to *IMO Indus.*, 155 F.3d at 265-66.)  Notably, the Third Circuit requires that the effect

must be something more than the fact that the harm caused by the defendant's intentional tort is

primarily felt within the forum.  *See id.* ("knowledge that the plaintiff is located in the forum ...

alone is insufficient to satisfy the targeting prong of the effects test").

Each of the Ohio State Defendants expressly states that the Article was not aimed at New

Jersey—rather the article was drafted for publication to be read by the anesthesiology community

at large.  (Hussain Decl. ¶ 14; Sheehy Decl. ¶ 14; Essandoh Decl. ¶ 14; Stahl Decl. ¶ 14; Weaver

Decl. ¶¶ 14.)  In fact, until this lawsuit, not one of the Ohio State Defendants even knew that Pacira

was headquartered in New Jersey.  (Hussain Decl. ¶ 13; Sheehy Decl. ¶ 13; Essandoh Decl. ¶ 13;

Stahl Decl. ¶ 13; Weaver Decl. ¶ 13.)  Furthermore, the brand name EXPAREL is only mentioned

once in the article, in a footnote identifying FDA approval of its use in interscalene block of the

brachial plexus.  (Compl. Exh. 1, ECF No. 1-1 at PageID 60.)  Under these facts, it cannot be said

that New Jersey is the focal point of any alleged tortious activity.

The decision in *Creditors Relief LLC v. United Debt Settlement LLC*, No. 17-7474 (JMV),

2019 U.S. Dist. LEXIS 222358, 2019 WL 7288978 (D.N.J. Dec. 30, 2019), is on all fours with this

case.  In *Creditors Relief*, the defendant (who was located in New York) reached out to the plaintiff,

who was located in New Jersey, to obtain the plaintiff's work product, subsequently posted that

work online as the defendant's own, and then allegedly published defamatory statements in a

Google review about the quality of the plaintiff's services.  *Id.* at \*2-4, \*1-2.  In applying the

"effects" test to determine whether the court had personal jurisdiction over the defendant, the court

found that the Google review was insufficient to prove the third prong, which requires "specific

17

activity indicting the defendant expressly aimed its tortious conduct at the forum." *Id.* at \*14, \*6 (citing *IMO Indus.*, 155 F.3d at 266). The court explained that "a defamatory statement made elsewhere about a New Jersey resident gives rise to specific jurisdiction here only if the defendant 'aimed its conduct at New Jersey such that New Jersey was the focal point of the tortious activity.'" *Id.* at \*16, \*6 (quoting *Display Works*, 182 F. Supp. 3d at 180.). Because the allegedly defamatory statements were posted on a website that was not "intentionally targeted or focused on New Jersey", it could not be said that the tortious conduct was aimed at New Jersey. *Creditors Relief*, 2019 U.S. Dist. LEXIS 222359, 2019 WL 7288978 at \*16-17, \*6-\*8.

The same result follows here. Any connection between Pacira and the Ohio State Defendants created through the Article is even more tenuous than that at issue in *Creditors Relief*. The Ohio State Defendants' publication only references the brand name EXPAREL in a single footnote and does not mention Pacira even once. There is not a single reference to New Jersey in the Article. *Anesthesiology* is not a publication that is targeted specifically at New Jersey. Any purported connection between the Ohio State Defendants and New Jersey created through publication of the Article by the ASA is simply too remote to establish personal jurisdiction over the Ohio State Defendants. Therefore, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## CONCLUSION

There is no set of facts that Pacira could allege that would bring its claim of trade libel against the Ohio State Defendants under the subject-matter or personal jurisdiction of this Court. If Pacira wants to be heard on its claim against the Ohio State Defendants, it must bring that claim in the Ohio Court of Claims. Accordingly, the Ohio State Defendants respectfully request

18

dismissal of this action pursuant to Fed R. Civ. P. 12(b)(1) and (2).

Respectfully submitted,

Dated: June 11, 2021

/s/Corinne McCann Trainor
Gerard P. Norton, Esq.
Corinne McCann Trainor, Esq.
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Tel: (609) 896-3600 / Fax (609) 896-1469
Email: GNorton@FoxRothschild.com
        CTrainor@FoxRothschild.com

David S. Bloomfield, Jr., Esq. (*Pro Hac Vice*)
Kirsten R. Fraser, Esq. (*Pro Hac Vice*)
**PORTER WRIGHT MORRIS & ARTHUR
LLP**
41 S. High St., Ste. 2900
Columbus, OH 43215
Tel: (614) 227-2000 / Fax (614) 227-2100
Email: dbloomfield@porterwright.com
        kfraser@porterwright.com

*Attorneys for Defendants Nasir Hussain,
Brendan Sheehy, Michael K. Essandoh,
David L. Stahl, and Tristan E. Weaver*

19